**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**RONALD A. WOODS,**

                      **Plaintiff,**

   vs.                                          **5:12-CV-1540
                                                         (MAD)**

**COMMISSION OF SOCIAL SECURITY,**

                      **Defendant.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**AMDURSKY, PELKY, FENNELL &**        **GREGORY R. GILBERT, ESQ.**
**WALLEN, P.C.**
26 East Oneida Street
Oswego, New York 13126
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **REBECCA H. ESTELLE, ESQ.**
Office of General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Ronald A. Woods brings the above-captioned action pursuant to 42 U.S.C. § 405(g), seeking a review of the Commissioner of Social Security's decision to deny his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Presently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt Nos. 8, 11.

## II. BACKGROUND

On August 8 and 22, 2008, Plaintiff protectively filed an application for DIB and SSI, respectively, alleging a disability onset date of September 5, 2007. *See* Dkt. No. 6, Administrative Transcript ("T."), at 67-76. On November 25, 2008, Plaintiff's applications were denied. *See* T. 30-35. Upon Plaintiff's request, Administrative Law Judge Gale held a hearing on September 12, 2011, *see* T. 38, and issued a decision denying Plaintiff's claims for benefits on February 10, 2012, *see* T. 11-22. Thereafter, Plaintiff requested review by the Appeals Council, which review was denied on August 24, 2012, thereby making the ALJ's decision the final decision of the Commissioner of Social Security. *See* T. 6-9.

Plaintiff was 53 years old at the time of the ALJ's decision. *See* T. 20. Plaintiff had a limited education, and had worked as a muffler/brake repair technician. *See id.* Plaintiff alleges disability as a result of lumbar spine degenerative disc disease, hypertension and hyperlipidemia, history of pneumonia, obesity, coronary artery disease, sleep disturbance, and learning disability. *See* T. 16-17.

## III. DISCUSSION

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the

2

> Commissioner must find him disabled if (5) there is not another type
> of work the claimant can do." The claimant bears the burden of proof
> on the first four steps, while the Social Security Administration bears
> the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)) (other citations omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since September 5, 2007, the alleged disability onset date. *See* T. 16. At step two, the ALJ

3

concluded that Plaintiff suffered from lumbar spine degenerative disc disease, which qualified as a "severe impairment" within the meaning of the Social Security Regulations (the "Regulations"). *See id.* The ALJ also concluded that the following conditions did not rise to the level of severe impairments: hypertension and hyperlipidemia, history of pneumonia, obesity, coronary artery disease, sleep disturbance, and learning disability. *See* T. 17. Specifically, the ALJ concluded that "[t]he record was devoid of evidence to establish a learning disability." *Id.* At the third step of the analysis, the ALJ determined that Plaintiff's impairments did not meet or equal the severity of any impairment listed in Appendix 1 of the Regulations. *See* T. 18. The ALJ then found that Plaintiff had the residual functional capacity ("RFC") "to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours in an eight-hour day, sit six hours in an eight-hour day, push and/or pull twenty pounds occasionally and ten pounds frequently, and occasionally crouch, crawl, and squat. He should not climb ladders or scaffolds and should avoid overhead lifting." *Id.* At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. *See* T. 20. At step five, relying on the medical-vocational guidelines set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that Plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. *See* T. 20-21. Therefore, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. *See* T. 21.

In seeking federal judicial review of the Commissioner's decision, Plaintiff argues that: (1) the Commissioner erred when he failed to find Plaintiff illiterate and failed to obtain a consultative exam on this issue; and (2) in light of Mr. Woods' illiteracy, the Commissioner erred in applying medical-vocational Rules 202.11 and 202.18 without considering medical-vocational Rule 202.00(d).

## IV. ANALYSIS

In the five-step analysis the ALJ uses, the education level of a claimant is used at the fifth step in order to determine whether the claimant is able to adjust to other work. *See* 20 C.F.R. § 404.1560(c)(1). Different education levels are defined in the regulations. Illiteracy is defined as "the inability to read or write" and a person is deemed illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." *Id.* § 404.1564(b)(1). A limited education, on the other hand, is defined as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the complex job duties needed in semi-skilled or skilled jobs." *Id.* § 404.1564(b)(3). A seventh through eleventh grade level of formal education is considered a limited education. *See id.* However, "the numerical grade level that [a claimant] completed in school may not represent [his or her] actual educational abilities," but will be used "if there is no other evidence to contradict it." *Id.* § 404.1564(b).

Here, the record before the ALJ contained conflicting evidence regarding whether Plaintiff has the ability to read or write. Although Plaintiff testified that he did complete the tenth grade in special education classes, there is evidence in the record that undermines a finding that Plaintiff attained a tenth grade literacy level. Notably, Plaintiff repeatedly claimed that he is unable to read. *See, e.g.*, T. 650. Plaintiff also represented that the last time his reading ability was tested, he was told he had a third grade reading level. *See* T. 95. When Plaintiff was treated at Crouse Hospital on January 3, 2008, a hospital consent form indicates that Plaintiff gave his consent verbally. *See* T. 485. Another record generated during that same visit reflects a nurse's notation that "p[atien]t doesn't read." *See* T. 510. In addition, Plaintiff indicated in a function report form for the New York State Office of Temporary and Disability Assistance, Division of Disability

5

Determinations, that he had a friend complete the form. *See* T. 98. Plaintiff also testified that he brings his mail to his daughter who helps him with paperwork, because he cannot read. *See* T. 672.

The record also contains evidence that indicates that Plaintiff does have the ability to read and write. For instance, in a Disability Report Form, Plaintiff indicated that he could read and understand English and write more than his name. *See* T. 90. In addition, when the ALJ asked Plaintiff if he has glasses "for reading or something," Plaintiff responded affirmatively. T. 648. As noted by the ALJ, Plaintiff was able to perform a semi-skilled job for over 20 years, *see* T. 92, and was able to obtain his driver's license, *see* T. 648. Moreover, although Plaintiff claimed that he has a third grade reading level, there is nothing in the record to support that assertion.

Notwithstanding this conflicting and inconclusive evidence, the ALJ did not properly evaluate this issue and failed to develop the record before concluding that "[t]he record was devoid of evidence to establish a learning disability." T. 17. First, the ALJ concluded, without any analysis, that Plaintiff had a limited education. The ALJ did not address the conflicting evidence in the record or otherwise explain his determination that there was no evidence to support a finding of a learning disability. Nor did the ALJ describe the weight given to Plaintiff's testimony or address the documents in the record indicating a possible learning disability, noting only that Plaintiff was able to hold a semi-skilled job and obtain a driver's license. *See id.*

Second, it is well-settled that an ALJ has an obligation to develop the record and obtain additional evidence if he or she is unable to make a disability determination based on the current record. *See* 20 C.F.R. § 416.920b(c); *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999) ("[I]t is the rule in our circuit that the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.") (internal

quotations omitted); *see also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir 1998) (stating that when findings are inadequate, the ALJ has a duty to seek additional information, *sua sponte*). This duty exists even if Plaintiff is represented by counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000).

Here, despite the duty to develop the record, the ALJ failed to question the Plaintiff specifically about his education and literacy or to order a cognitive examination. *See Clancy v. Astrue*, No. 7:06-cv-1486, 2009 WL 1457690, *5 (N.D.N.Y. May 22, 2009) ("The ALJ could have easily questioned Plaintiff about the literacy demands of his past work, his daily activities, or even maintaining his driver's license . . . [or] the ALJ could have had Plaintiff's literacy tested."). Thus, "the record does not contain substantial evidence which would allow the conclusion regarding the *extent* of [Plaintiff's reading and writing] limitations." *Dixie v. Comm'r of Soc. Sec.*, No. 5:05-CV-345, 2008 WL 2433705, *11 (N.D.N.Y. June 12, 2008); *see also Gross v. McMahon*, 473 F. Supp. 2d 384, 390 (W.D.N.Y. 2007) (ordering remand for failure to develop the record on the issue of the plaintiff's literacy and collecting cases).

The lack of evidence in the record to determine Plaintiff's literacy level is particularly important in this case, because Plaintiff's literacy level was potentially dispositive of the outcome. The ALJ determined that Plaintiff was "not disabled" based upon Medical Vocational Rules 202.11 and 202.18, which apply to a claimant with limited or less education, but excludes illiteracy. As a result, the ALJ did not consider Rule 202.00(d), which, when read along with Rule 202.00(c), provides that:

> (c) [individuals closely approaching advanced age] who can no longer perform vocationally relevant past work and who have a history of work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience . . . warrant a finding of disabled . . . (d). . . [if the]

7

> individual's vocational scope is further significantly limited by illiteracy or inability to communicate in English.

20 C.F.R. Pt. 404, Subpt. P, App. 2, R. 202.00(c), (d); *see also Campbell v. Astrue*, 713 F. Supp. 2d 129, 136 (N.D.N.Y. 2010) (holding that "[d]evelopment of the record on illiteracy is especially important in this case because the question is determinative of whether Plaintiff was disabled under the Medical-Vocational rule."); *Clancy*, 2009 WL 1457690, at *5 (holding that Plaintiff's literacy was a "crucial area of inquiry" because that finding determined which Medical-Vocational Rule applied).

The Court finds that in light of the ALJ's duty to develop the record, substantial evidence does not support the ALJ's finding that Plaintiff has a "limited education." *See Campbell*, 713 F. Supp. 2d at 136 (remanding where plaintiff's statements were the only evidence on the issue of illiteracy)*; Colon v. Astrue*, No. 09-CV-6527, 2010 WL 2925969, *2-3 (W.D.N.Y. July 23, 2010) (remanding for development of the record where ALJ's determination that plaintiff was able to perform full range of sedentary work was contradicted by plaintiff's testimony that he was illiterate and unsupported by evidence of any formal literacy testing in the record); *Dixie*, 2008 WL 2433705, at *11 (remanding for development of the record because "even crediting the strongest evidence regarding plaintiff's ability to read and write, the record falls short of providing substantial evidence that plaintiff had a 'limited education'"). Accordingly, the case is remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further development of the record on the issue of Plaintiff's education level and/or learning disability.[1]

## V. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

---

[1] Since this case is remanded based upon the ALJ's failure to develop the record, the Court need not address Plaintiff's second argument regarding the application of the Medical-Vocational guidelines.

8

applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability is **REVERSED** and this matter is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g),[2] for further proceedings consistent with this Order; and the Court further

**ORDERS** that the Clerk of the Court should enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 27, 2014
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[2] Sentence four of § 405(g) provides that "[t]he Court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).

9